UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INTERNATIONAL LEISURE PRODUCTS, INC.,

                Plaintiff,

-against-

SUNNYLIFE AUSTRALIA, SUNNYLIFE USA,
BLOOMINGDALES, INC.,

                Defendants.

No. 16-cv-6215 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff International Leisure Products, Inc. ("ILP"), brings this action against Sunnylife Australia, Sunnylife USA, and Bloomingdales, Inc. (collectively, "Defendants"), alleging federal trade dress infringement, federal false designation of origin, federal unfair competition, and federal dilution in violation of the Lanham Act, 15 U.S.C. § 1125, as well as state law trademark infringement, state law dilution, unjust enrichment, and injunctive relief. Before this Court is Defendants' Motion to Dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' Motion is GRANTED.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/12/2018

## BACKGROUND

Plaintiff International Leisure Products, Inc. ("ILP") is a New York corporation with its principal place of business in Edgewood, New York. (Second Amended Complaint ("Compl.") ¶ 6, ECF No. 31.) ILP manufactures and sells inflatable swimming pool toy products under their "GIANT SWAN™" brand ("Giant Swan"). (*Id.* ¶ 10.) ILP's Giant Swan inflatable pool toy product line is comprised of several products including inflatable swans of different sizes and colors, inflatable flamingos, ducks, toucans, parrots and eagles. (*Id.* ¶ 13.) Their Giant Swan swimming pool toy products are widely sold in retail and online outlets across the country. (*Id.* ¶ 10.)

In or around 2007, ILP introduced its "Inflatable Swan" pool toy as a part of their Giant Swan product line. (*Id.* ¶12.) Since its introduction, ILP alleges that it built substantial brand awareness and good will through extensive advertising, promotional efforts and sales. Their Giant Swan pool toy products, including the Inflatable Swan, have received unsolicited publicity, reviews and news coverage stemming from their popularity and use by celebrities. Plaintiff invested more than $1 million in advertising and promoting its Inflatable Swan and more than $1.3 million in advertising and promoting its Giant Swan pool toy product line. (*Id.* ¶ 12.) The Giant Swan product line generates at least $6 million in sales per year and the Inflatable Swan pool toy accounts for about half of yearly sales. (*Id.* ¶ 13.)

### The Inflatable Swan

ILP's most prominent product of the Giant Swan line is their Inflatable Swan. The Inflatable Swan is a large flotation device that resembles a swan. ILP has invested considerable resources in creating and promoting the physical appearance of their Inflatable Swan. (*Id.* ¶ 23.) Their goal was to create an inflatable pool toy product design with features that are distinctive, memorable, and appealing to customers. (*Id.*) The Inflatable Swan consists of an arrangement of

seven elements which Plaintiff alleges are "collectively ornamental and do not serve any functional purpose." (*Id.* ¶ 17.)

Those elements as described by the Plaintiff are:

(a) the circular or elliptical periphery and recessed interior configuration of the inflatable base with a height in proportion to the circumference of the base to provide a pleasing appearance; (b) the substantially vertical inclination and straight line of the "neck" portion projecting from the periphery of the base, the neck having a particular thickness and height to be in aesthetic proportion to the base; (c) the stylized depiction of the head including the face of a bird, possibly resembling a swan, wherein the stylized countenance has two eyes each having a dark periphery and a light or white center, and a bill or beak surrounded by a shaped border that merges with the periphery of the eyes; (d) the elongated tubular shape of the stylized appendages located on opposite sides of the base, with a height and thickness in aesthetic proportion to the base and optional horizontal arcing lines, the stylized appendages being instead of a bird's wings and also optionally having a generally conical upwardly inclined protuberance; (e) the conical shape of the tail, and the substantially upward inclination of that conical shape from the periphery of the base at the end opposite that from which extends from the neck; (f) a signature color scheme with white, black, gold or pink coloration of the body, orange coloration of the bill/beak and the described coloration of other facial features; and (g) an overall smooth and flexible texture.

(*Id.* ¶17 (a)–(g).)[1] ILP alleges that these purportedly non-functional elements comprise their product's trade dress within the meaning of the Lanham Act. (*See Id.* ¶ 18, 22.) These elements, Plaintiff alleges, are not essential, even from an aesthetic standpoint, to the use, purpose, cost or quality of the inflatable pool toy product. (*Id.* ¶18.) Instead, Plaintiff describes the Inflatable Swan's appearance as being comprised of "fanciful elements that individually and in combination create an overall distinctive appearance that is readily identifiable by consumers as signifying a product originating with ILP and/or associated with the GIANT SWAN™ brand." (*Id.* ¶ 14.)

As a result of ILP's work in developing the Giant Swan's appearance, coupled with their large-scale national advertisement campaigns promoting the Giant Swan pool toy product line,

---

[1] *See* Appendix, Exh. 1.

3

ILP alleges that "consumers have come readily to associate the GIANT SWAN™ Trade Dress with, and rely on it to identify, inflatable pool toy products of the highest quality that originate from a single source (i.e., ILP)." (*Id.* ¶ 24.) Consequently, the Giant Swan brand has built substantial goodwill and consumer brand loyalty. (*Id.*)

**Competing Product**

Defendants Sunnylife USA and Sunnylife Australia (collectively, "Sunnylife") manufacture and distribute inflatable pool toy products in retail and online outlets under the brand name "Sunnylife." (*Id.* ¶ 25.) Defendant Bloomingdales sells Sunnylife's products at their retail stores throughout the country, including its retail store in White Plains, New York. (*Id.* ¶ 26.) Most relevant here is that Sunnylife also manufactures and distributes a large inflatable swan pool toy. Sunnylife's iteration, however, is marketed as the "Really Big Inflatable Swan." This product is available for purchase in white, black and gold, and in two smaller sizes. (*Id.* ¶ 25.) Plaintiff alleges that Defendants Sunnylife have copied, and continue to copy, the Inflatable Swan's trade dress.

Plaintiff further posits that Sunnylife's inflatable pool toy products compete directly with ILP's Giant Swan inflatable pool toy product line on the basis of "their comparable functionality"[2] and that Sunnylife intended to appropriate the Giant Swan trade dress and the good will associated with Plaintiff's brand. (*See Id.* ¶ 27–28.) Plaintiff claims that Sunnylife's Really Big Inflatable Swan is a "virtually identical" replica of their Inflatable Swan and that it copies "nearly every distinctive feature" of the Giant Swan trade dress. (*Id.* ¶ 29.)

---

[2] Plaintiff notes that the parties' inflatable pool toy products are typically sold side by side on online outlets. (Compl. ¶ 27.)

Consequently, Plaintiff asserts that Sunnylife's Really Big Inflatable Swan infringes on the Giant Swan trade dress. (*Id.* ¶ 30.) Plaintiff specifically identifies seven features from Sunnylife's version which together infringe on the Giant Swan Trade Dress:

> (a) a circular or elliptical inflatable base with a recessed interior, the base being of a height in proportion to the circumference of the base to provide a pleasing appearance, which simulates ILP's Trade Dress element "a", paragraph 17; (b) an upright "neck" portion placed on the periphery of the base, the neck having a particular thickness and height in aesthetic proportion to the base, which simulates ILP's Trade Dress element "b", paragraph 17; (c) the neck also having on its upper end a stylized depiction of the head and face of a swan, the head and face further consisting of two dark-edged eyes and a dark bordered bill or beak with the dark edging of the eyes flowing into the dark border of the bill or beak, which simulates ILP's Trade Dress element "c", paragraph 17; (d) two stylized appendages located on opposite sides of the base, the appendages being generally of an elongated, tubular shape with a height and thickness in aesthetic proportion to the base, each having a distinct protuberance as well as has horizontal arced lines, which simulates ILP's Trade Dress element "d", paragraph 17; (e) a conical protuberance extending upwardly from the circumference of the base opposite to the neck, which simulates ILP's Trade Dress element "e", paragraph 17; (f) a color scheme like ILP's, and (g) an overall smooth and flexible texture.

(*Id.* ¶ 30 (a)–(g).)[3]

Defendants moves to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Def. Mem. of Law in Supp. of Mot. to Dismiss Pl. Second Amended Compl. ("Def. Mot.") 1, ECF No. 32.)

## STANDARD ON A MOTION TO DISMISS

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint and requires a court to determine whether the facts alleged are sufficient to show that the plaintiff has a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). When ruling on a Rule 12(b)(6) motion, a court must accept the factual allegations set forth in the complaint as true and draw all

---

[3] *See* Appendix, Exh. 2.

5

reasonable inferences in favor of the plaintiff. *See, e.g., Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). To survive such a motion, however, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 679. In assessing whether this standard has been met, courts take "all factual allegations contained in the complaint" as true, *Twombly*, 550 U.S. at 572, and "draw all inferences in the light most favorable to the non-moving party[ ]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (citation omitted).

A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.,* and cannot rely on mere "labels and conclusions" to support a claim. *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

## DISCUSSION

Plaintiff asserts seven causes of action stemming from Defendants' alleged use of the Giant Swan trade dress. The Court takes the relevant claims in turn.

### Federal Trade Dress Infringement

Plaintiff alleges that the Defendants violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

The purpose of federal trademark laws, such as the Lanham Act, is to "secure the public's interest in protection against deceit as to the sources of its purchases, [and] the businessman's

right to enjoy business earned through investment in the good will and reputation attached to a trade name." *Christian Louboutin S.A. v. Yves Saint Laurent America Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012) (quotations and citation omitted). Congress intended the Lanham Act to make "'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in . . . commerce against unfair competition.'" *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003) (quoting 15 U.S.C. § 1127). The Act provides protections for both registered and unregistered marks. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209–10 (2000); *Urban Group Exercise Consultants, LTD., v. Dick's Sporting Goods Inc.*, No. 12 Civ. 3599(RWS), 2012 WL 3240442, at *3 (S.D.N.Y. Aug. 7, 2012). Despite the Lanham Act's proscriptive function, its protections "must be construed in the light of a strong federal policy in favor of vigorously competitive markets." *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 269 F.3d 114, 119 (2d Cir. 2001).

Most relevant to this case, Section 43(a) of the Act protects what is known as a product's "trade dress— a category that originally included only the packaging, or dressing, of a product, but in recent years has been expanded by many Courts of Appeals to encompass the design of a product." *Wal-Mart*, 529 U.S. at 209. A product's trade dress simply means "'the total image of a product and may include features such as size, shape, color or color combinations, texture or graphics.'" *Ward v. Andrews McMeel Publ'g, LLC*, 963 F. Supp. 2d 222, 235 (S.D.N.Y. 2013) (quoting *Stormy Clime Ltd. v. ProGroup, Inc.*, 809 F.2d 971, 974 (2d Cir. 1987)). Trade dress may refer to a single element of a product or a combination thereof. When a Plaintiff asserts that a product's trade dress consists of multiple elements, a court must evaluate those features taken together, and not in isolation. *See Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 548 (S.D.N.Y. 2003) ("Where the asserted trade dress extends to the

7

'overall look' of the combination of features comprising a product or product line, the Court must evaluate the distinctiveness and functionality of those features taken together, not in isolation"). Although federal law offers protection for trade dress, a product's trade dress "must subsist with the recognition that in many instances there is no prohibition against copying goods and products. In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying." *Nora Beverages*, 269 F.3d at 19 (quoting *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001)).

A Plaintiff bringing a trade dress infringement claim based on the appearance of a product "must allege that (1) the claimed trade dress is non-functional; (2) the claimed trade dress has secondary meaning; and (3) there is a likelihood of confusion between the plaintiff's good and the defendant's." *Ward*, 963 F. Supp. 2d at 235 (S.D.N.Y. 2013) (citing *Sherwood 48 Associates v. Sony Corp. of America*, 76 F. App'x 389, 391 (2d Cir. 2003). Additionally, Plaintiff must "offer a precise expression of the character and scope of the claimed trade dress." *Sherwood*, 76 F. App'x at 391.

Under the first element, Plaintiff must plead that their unregistered trade dress is "non-functional." *See Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001); *Ward*, 963 F. Supp. 2d at 238.[4] Federal law recognizes two forms of functionality: (1) traditional/utilitarian functionality; and (2) aesthetic functionality. *Louboutin*, 696 F.3d at 219. A product feature is functional under the traditional *Inwood* definition "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Id.* (quoting *Inwood Labs., Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850 n.10 (1982)). "A feature is essential if [it] is dictated by the functions to be performed by the article." *Id.* (quotations and citations omitted). If the trade dress

---

[4] This element refers to what courts recognize as the "functionality doctrine."

is functional under *Inwood*, then the inquiry ends there. However, if the trade dress is not functional under the traditional *Inwood* test, and Plaintiff asserts that the elements of their trade dress are ornamental or aesthetic, the aesthetic functionality doctrine requires the additional fact-intensive inquiry recognized in *Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159, 165 (1995) and *TrafFix*, 532 U.S. at 32, namely "if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Louboutin*, 696 F.3d at 219–20; *DO Denim, LLC v. Fried Denim, Inc.*, 634 F. Supp. 2d 403, 408 (S.D.N.Y. 2009) (noting that in cases involving the functionality of aesthetic features, "the [trade] dress is also functional if the right to use it exclusively would put competitors at a significant non-reputation-related disadvantage") (citing *Yurman Design*, 262 F.3d at 116).

The functionality doctrine "prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Qualitex*, 514 U.S. at 164. The functionality analysis requires a careful balance of "the policy of protecting consumers from confusion against that in favor of free competition." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 377 (2d Cir. 1997). In making that balance, the functionality doctrine denies protection where an "ornamental feature is claimed as a trademark and trademark protection would significantly hinder competition by limiting the range of adequate alternative designs" but may protect "distinctive and arbitrary arrangements of predominantly ornamental features that do not hinder potential competitors from entering the same market with differently dressed versions of the product." *Louboutin*, 696 F.3d at 222 (quotations and citations omitted).

The Defendants move to dismiss the trade dress infringement claim solely on the functionality prong. (Def. Mot. 7.) Defendants argue that the elements of the Plaintiff's Inflatable

Swan at issue in this case are functional, and thus, Plaintiff fails to state a claim upon which relief can be granted. (*Id.* 10, 14.) Specifically, Defendant contends that the "elements articulated by Plaintiff clearly serve[] a utilitarian function including flotation, seating, grip, and stability." (*Id.* 14.) Further, Defendant claims that the elements serve an aesthetic function, such as depicting the swan's body, head, neck, face, wings, and tail. (*Id.*) The aesthetic elements are functional because the right to use them exclusively would put Defendants at a significant non-reputation-related disadvantage. (*Id.*) Lastly, Defendants posit that Plaintiff failed to plead non-functionality with sufficient particularity. (*Id.*)

Plaintiff retorts by noting that their trade dress is comprised of a number of elements which are ornamental and source-indicative in and of themselves. (Pl. Mem. Opp. Mot. to Dismiss Second Amended Compl. ("Pl. Mot.") 6, ECF No. 34.) Further, the Giant Swan trade dress does not consist of separate elements in isolation, but rather, the combination of specified "ornamental elements . . . irrespective of individual functionality." (*Id.*) Further, Plaintiff posits that they properly alleged that the trade dress elements are non-functional because they are not "essential to the use, cost or quality of its inflatable toy product." (*Id.* 9 (internal quotations omitted).)

Defendants' motion to dismiss is granted because the Plaintiff failed to plead sufficient facts to support the functionality prong of a trade dress infringement claim.[5]

---

[5] Failure to properly plead non-functionality undermines the rest of the Lanham Act claims because the Act does not protect trade dress that is functional. *See Telebrands Corp. v. Del Laboratories, Inc.*, 719 F. Supp. 2d 283, 296–98 (S.D.N.Y. 2010) (dismissing federal unfair competition claim because Plaintiff did not properly plead that their trade dress was not functional); *DO Denim*, 634 F.Supp.2d at 408 ("Plaintiff must also [properly plead] non-functionality when claiming trade dress dilution pursuant to Section 43(c) of the Lanham Act"); *Fraga v. Smithaven MRI*, 866 F. Supp. 107, 110 (E.D.N.Y. 1994) ("In order to prevail on a federal false designation of origin claim, the movant must make an initial showing that its mark

The Plaintiff's detailed complaint[6] tracks the seven features comprising the Giant Swan trade dress as exhibited by its Inflatable Swan as well as the features of the Defendant's Really Big Inflatable Swan, which purportedly infringes upon the Giant Swan trade dress. Plaintiff does not assert in conclusive terms that the trade dress is non-functional, but rather, properly pleads facts buttressing their proposition. *See Visual Impact Films Corp. v. Athalon Sportgear, Inc.*, 16 CV 355 (VB), 2016 WL 6426399, at *2 (S.D.N.Y. Oct. 27, 2016). Plaintiff describes, with particularity, the shape, size, and composition of their product. Further, the Plaintiff asserts that the described elements are "both individually and collectively ornamental and do not serve any functional purpose." (Compl. ¶ 17.) These elements, the Plaintiff posits, are not essential to the use, purpose, and cost or quality of their product because there is no necessity to arrange the elements in the manner in which they did in order to evoke a swan or another bird. (*Id.* ¶18.) The Complaint also posits that the trade dress is not functional because it is distinctive and serves as a "source identifier" which consumers associate with their trade dress. (*Id.* ¶ 22.) In this case, "plaintiff describes its trade dress in terms of aesthetics, not functionality." *Visual Impact*, 2016 WL 6426399, at *3. Thus, Plaintiff appears to have alleged sufficient facts to state a claim upon which relief can be granted under the traditional *Inwood* test.

---

or name warrants protection under the Lanham Act") (citing *Western Publishing Co. v. Rose Art Indus.*, 910 F.2d 57, 59 (2d Cir.1990)).

[6] It bears noting that the Defendant argues that the Court should consider the Plaintiff's First Amended Complaint ("FAC") because the facts stated in that complaint contradict the factual allegations in the Second Amended Complaint. (Def. Mot. 4.) The Court finds this argument unavailing. Although it is true that a Court may consider a prior complaint where the Plaintiff contradicts the facts set forth in the prior pleading, *Dozier v. Deutsche Bank Trust Co. Americas*, No. 09 Civ. 9865(LMM), at *2 (S.D.N.Y Sept. 1, 2011), the FAC does not contradict the Second Amended Complaint. Although the FAC lacks the specificity exhibited in the Second Amended Complaint, it is clear from the reading of the FAC that Plaintiff merely attempted to refine the language in their claims rather than change their factual allegations altogether.

Plaintiff's trade dress claims, however, are based on the product's aesthetics and ornamental features which, as the Defendant rightfully points out, requires an additional inquiry—namely "if the right to use [the trade dress] exclusively would put competitors at a significant non-reputation-related disadvantage." *Yurman Design, Inc.*, 262 F.3d at 116 (quotations and citation omitted). Although a finding of whether a trade dress is functional is "essentially a fact question," *Eliya, Inc. v. Kohl's Dept. Store*, No. 06 Civ 195(GEL), 2006 WL 2645196, at *4 (S.D.N.Y. Sept. 13, 2006), Plaintiff must, of course, allege sufficient facts pertaining to the functionality prong.

Throughout the Second Amended Complaint, Plaintiff makes repeated references to the connection between the Giant Swan trade dress and the reputation of their Inflatable Swan. However, nowhere in the Second Amended Complaint does the Plaintiff allege whether protecting the Giant Swan trade dress would put "competitors at a significant non-reputation-related disadvantage." *See DO Denim, LLC*, 634 F. Supp. 2d at 408 (granting Defendant's motion to dismiss in part because Plaintiff did not make factual allegations as to whether protecting the alleged trade dress would put competitors at a significant non-reputation- related disadvantage). It is incumbent upon Plaintiff to provide factual allegations as to why their trade dress is not aesthetically functional and why the ornamental features of the product merit protection. 15 U.S.C. § 1125(a)(3) ("In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional"). Thus, Defendants' motion to dismiss must be granted because Plaintiff failed to make factual allegations as to why protecting their trade dress would not put competitors at a significant non-reputation-related advantage.

Further, not only did Plaintiff fail to allege facts central to the aesthetic functionality inquiry, but also attempts to protect a trade dress, which in its totality, represents features that are necessary for competition in the market for swan-like pool toy products. It is well established in the Second Circuit that a trade dress is aesthetically functional when it is purely ornamental and the features are necessary for competition in the relevant market. *Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co., Inc.*, 916 F.2d 76, 81(2d Cir. 1990) (holding that ornamental features of a product are aesthetically functional when their use is necessary for competition in the relevant market), *abrogated by Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992). In *Wallace*, Plaintiff sought trademark protection for certain elements of their baroque-style silverware. *Id.* The Second Circuit held that the aesthetic functionality doctrine barred such protection because Plaintiff did not seek protection "for a precise expression of a decorative style, but for basic elements of a style that is part of the public domain." *Id.*

Similarly here, Plaintiff's verbose description does not provide sufficient factual allegations describing how their product's trade dress is not commonplace or ubiquitous in the inflatable pool toy market, thus significantly hindering competition in the relevant market. The seven elements provided by the Plaintiff describe, in great detail, the composition and position of the Inflatable Swan's body, neck, head, wings, tail, color scheme, and texture. Plaintiff, however, failed to describe anything particularly unique about their product's trade dress. Plaintiff simply described the basic elements of a swan that floats on water—basic elements which are readily available in the public domain. *Wallace*, 916 F.2d at 81–82; *see also Bubble Genius*, 239 F. Supp. 3d at 596 (noting that the functionality doctrine bars the protection of basic elements of a style that is part of the public domain). Given Plaintiff's description of their Giant Swan trade dress, Plaintiff, conceivably, would be capable of successfully challenging just about any

iteration of an inflatable swan pool toy. That conclusion undermines the purpose of the Lanham Act, and would essentially provide the Plaintiff with a perpetual monopoly on inflatable swan-like toy products. *See Louboutin*, 696 F.3d at 218–19. Consequently, taking the complaint's factual allegations as true, and drawing all inferences in the light most favorable to the Plaintiff, ILP has not stated a claim upon which relief can be granted.

## CONCLUSION

Plaintiff's federal claims arising under the Lanham Act are dismissed with prejudice. The Court declines to exercise jurisdiction over the remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3). The Clerk of Court is respectfully requested to terminate the motion at ECF No. 32 and close this case.

Dated: March 12, 2018
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

# Appendix

## Exhibit 1: ILP "Inflatable Swan"



## Exhibit 2: Sunnylife "Really Big Inflatable Swan"

